## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                          :
**DAVID ROBERT THOMPSON**                        : CASE NO. 1-18-00449-RNO
aka **DAVE ROBERT THOMPSON**                     :
**DENISE PEARL THOMPSON**                        :
      Debtors                              : CHAPTER 13
                                            :
**DAVID ROBERT THOMPSON**                        :
aka **DAVE ROBERT THOMPSON**                     :
**DENISE PEARL THOMPSON**                        :
      Movants                              :
                                            :
    v.                                 :
                                            :
**CHARLES J. DEHART, III, ESQUIRE,**             :
**CARTER LUMBER COMPANY, INC.,**                 :
**FIRST NATIONAL BANK OF PA,**                   :
**NATIONSTAR MORTGAGE, LLC, aka**                :
**MR. COOPER,**                                  :
**CUMBERLAND COUNTY TAX CLAIM**                  :
**BUREAU**                                       :
      Respondents                          :

## CERTIFICATE OF SERVICE

If service was made by personal service, by residence service or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

I served a copy of ___Order setting Objection and Hearing Dates and Motion to Sell Real Estate Free and Clear of Liens with Exhibits___ on the following parties in this matter:

| Name and Address | Mode of Service |
|---|---|
| CARTER LUMBER COMPANY, INC.<br>601 TALMADGE ROAD<br>KENT, OH 44240 | Certified Mail<br><br>**OFFICER, MANAGING OR GENERAL AGENT, OR ANY OTHER AGENT AUTHORIZED BY APPOINTMENT, OR BY LAW, TO RECEIVE SERVICE OF PROCESS** |
| JOSHUA J. BOVENDER, ESQUIRE<br>THOMAS, THOMAS & HAFER, LLP<br>305 N. FRONT STREET, 6TH FLOOR<br>HARRISBURG, PA 17101 | Certified Mail |
| JOHN M. HYAMS, ESQUIRE<br>2023 N. SECOND STREET, SUITE 110A<br>HARRISBURG, PA 17110 | Certified Mail |

| | |
|---|---|
| FIRST NATIONAL BANK OF PA<br>DONNA M. DONAHER, ESQUIRE<br>100 FEDERAL STREET, 4TH FLOOR<br>PITTSBURGH, PA 15212 | Certified Mail |
| NATIONSTAR MORTGAGE, LLC<br>DBA MR. COOPER<br>KARINA VELTER, ESQUIRE<br>MANLEY DEAS KOCHALSKI LLC<br>P.O. BOX 165028<br>COLUMBUS, OH 43216-5028 | 1st Class Mail<br>(cannot send certified mail to a post office box)<br><br>**OFFICER, MANAGING OR GENERAL AGENT, OR ANY OTHER AGENT AUTHORIZED BY APPOINTMENT, OR BY LAW, TO RECEIVE SERVICE OF PROCESS** |
| NATIONSTAR MORTGAGE, LLC<br>DBA MR. COOPER<br>ATTN BANKRUPTCY DEPT<br>PO BOX 619096<br>DALLAS, TX 75261-9741 | 1st Class Mail<br>(cannot send certified mail to a post office box)<br><br>**OFFICER, MANAGING OR GENERAL AGENT, OR ANY OTHER AGENT AUTHORIZED BY APPOINTMENT, OR BY LAW, TO RECEIVE SERVICE OF PROCESS** |
| CUMBERLAND COUNTY TAX CLAIM BUREAU<br>1 COURTHOUSE SQUARE, ROOM 106<br>CARLISLE, PA 17013 | Certified Mail |
| CHARLES J DEHART, III, ESQUIRE<br>CHAPTER 13 TRUSTEE | Via E-Service |
| ANNE FIORENZA ESQUIRE<br>OFFICE OF UNITED STATES TRUSTEE<br>228 WALNUT STREET, SUITE 1190<br>HARRISBURG PA 17101 | 1st Class Mail, Postage Prepaid |

I certify under penalty of perjury that the foregoing is true and correct.

Date: __6/19/2018__         Name: __Gary J. Imblum, Esquire__
                                   Printed Name of Attorney

                           Address: __4615 Derry Street__
                                    __Harrisburg, PA 17111__

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re:

David Robert Thompson,
aka Dave Robert Thompson,

**Debtor 1**

Denise Pearl Thompson,

**Debtor 2**

Chapter: 13

Case number: 1:18−bk−00449−RNO

Document Number: 77

Matter: Motion for Sale Free and Clear of Liens

David Robert Thompson
aka Dave Robert Thompson
Denise Pearl Thompson
**Movant(s)**

vs.

Charles J DeHart, III, Esquire, Carter Lumber Company Inc, First National Bank of PA, Nationstar Mortgage LLC aka Mr Cooper, Cumberland County Tax Claim Bureau
**Respondent(s)**

## Order

Unless earlier served through CM/ECF, **IT IS ORDERED** that service of this Order and the above−referenced Motion shall be made by the moving party on all respondent(s) named in the Motion claiming an interest in the property, counsel, and in a Chapter 11 case service shall also be made upon the Trustee, if any, U.S. Trustee and the individuals identified in F.R.B.P. 4001(a)(1) and L.B.R 4001−6. Service shall be made within seven (7) days from the date hereof and certification of service filed with this Court within fourteen (14) days from the date hereof.

**IT IS FURTHER ORDERED** that answers to the Motion must be served on the moving party and a copy filed with this Court, within fourteen (14) days from the service date of this Order. If no Response is filed, relief may be granted. A hearing will be held if a responsive pleading is timely filed, requested by the moving party, or ordered by the Court. If a default order has not been signed and entered, the parties or their counsel are required to appear in Court at the hearing on the below date and time.

| | |
|---|---|
| United States Bankruptcy Court Ronald Reagan Federal Building, Bankruptcy Courtroom (3rd Floor), Third & Walnut Streets, Harrisburg, PA 17101 | Date: July 26, 2018 Time: 10:00 AM |

Dated: June 19, 2018

By the Court,

*Robt N. Opel II*

Honorable Robert N. Opel, II
United States Bankruptcy Judge
By: CKovach, Deputy Clerk

Initial requests for a continuance of hearing *( L.B.F. 9013−3, Request to Continue Hearing/Trial with Concurrence)* shall be filed with the Court. Requests received by the Court within twenty−four (24) hours of the hearing will not be considered except in emergency situations. Additional requests for continuance must be filed as a Motion.

Requests to participate in a hearing telephonically shall be made in accordance with L.B.R. 9074−1(a).

Electronic equipment, including cell phones, pagers, laptops, etc., will be inspected upon entering the Courthouse. These devices may be used in common areas and should be turned to silent operation upon entering the Courtroom and Chambers.

Photo identification is required upon entering the Courthouse.

orreshrg(5/18)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| DAVID ROBERT THOMPSON | : | CASE NO. 1-18-00449-RNO |
| aka DAVE ROBERT THOMPSON | : | |
| DENISE PEARL THOMPSON | : | |
| Debtors | : | CHAPTER 13 |
| | : | |
| DAVID ROBERT THOMPSON | : | |
| aka DAVE ROBERT THOMPSON | : | |
| DENISE PEARL THOMPSON | : | |
| Movants | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES J. DEHART, III, ESQUIRE, | : | |
| CARTER LUMBER COMPANY, INC., | : | |
| FIRST NATIONAL BANK OF PA, | : | |
| NATIONSTAR MORTGAGE, LLC, aka | : | |
| MR. COOPER, | : | |
| CUMBERLAND COUNTY TAX CLAIM | : | |
| BUREAU | : | |
| Respondents | : | |

## MOTION TO SELL REAL ESTATE
## FREE AND CLEAR OF LIENS

**AND NOW,** come Debtors, David Robert Thompson and Denise Pearl Thompson, by and through their attorney, Gary J. Imblum, and pursuant to 11 U.S.C. § 363 and respectfully represent:

1.      Debtors filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on February 2, 2018.

2.      Debtors are the owners of real estate situate and known as 199 Beagle Road, Carlisle, Cumberland County, Pennsylvania.

3.      The real estate is presently listed with Re/Max 1st Advantage. Realtor commission is in the amount of 6%. The employment of said realtor was approved by Order of Court dated May 16, 2018.

4. Debtors have entered into an Agreement of Sale to sell said property for a total price of $403,000.00 to Timothy Wilson and Ann Wilson, a non-relative and non-insider. A copy of the Agreement of Sale is attached hereto as Exhibit "A" and is incorporated herein by reference.

5. To the best of Debtors knowledge, all the parties who have a lien on said property include, but are not limited to the following:

      a. Cumberland County Tax Claim Bureau - statutory lien;

      b. Cumberland County Tax Claim Bureau - real estate taxes, if any;

      c. Nationstar Mortgage, LLC, a/k/a Mr. Cooper - first mortgage;

      d. First National Bank - second mortgage; and

      e. Carter Lumber Company, Inc. - judgment lien. (If Debtors successfully avoid this lien as a preference or otherwise, no payment will be made towards this debt from the proceeds of sale).

**WHEREFORE**, Debtors respectfully request that this Honorable Court issue an Order approving the sale of aforesaid real estate, free and clear of liens and the distribution of the proceeds as set forth below shall be permitted and that Federal Bankruptcy Rule 6004(g) is not applicable, and the real property may be sold and purchased immediately upon entry of Order of Court approving same:

1. Payment of all closing costs for which Debtors are liable.

2. Payment of attorney's fees of the amount approved by the Court pursuant to the Fee Application filed simultaneously herewith.

3. Payment of any and all other miscellaneous fees involved with the refinance.

4. Except as otherwise stated below, payment of any liens and mortgages in order of priority.

5.     As long as same is a valid lien on subject real estate, payment in full of Cumberland County Tax Claim Bureau statutory lien, or else the sale will not occur.

6.     As long as same is a valid lien on subject real estate, payment in full of Cumberland County Tax Claim Bureau real estate taxes, if any, or else the sale will not occur.

7.     As long as same is a valid lien on subject real estate, payment in full of Nationstar Mortgage, LLC, a/k/a Mr. Cooper, mortgage, or else the sale will not occur.

8.     As long as same is a valid lien on subject real estate, payment in full of First National Bank mortgage, or else the sale will not occur.

9.     If Debtors successfully avoid the Carter Lumber Company, Inc's lien as a preference or otherwise, no payment will be made towards this debt from the proceeds of sale.

10.     Payment to Debtors up to the entire amount of their exemption in subject real estate.

11.     If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to Trustee DeHart in an amount up to the amount necessary to fully fund the Plan, less any amount otherwise payable to a secured creditor pursuant to Debtors' Plan, which is, in fact, paid at settlement.

Respectfully submitted,

Gary J. Imblum
Attorney Id. No. 42606
4615 Derry Street
Harrisburg, PA  17111
(717) 238-5250
Fax No. (717) 558-8990
gary.imblum@ imblumlaw.com
Attorney for Debtors

Dated: 6/18/18

DocuSign Envelope ID: F4CFF32D-753A-4199-AF86-018F94F4E7CC

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

**BUYER(S):** Timothy Wilson
Ann Wilson

**SELLER(S):** David Thompson
Denise Thompson

**BUYER'S MAILING ADDRESS:**
606 Linwood Street
New Cumberland PA 17070

**SELLER'S MAILING ADDRESS:**
199 Beagle Club Road
Carlisle PA 17013

## PROPERTY

ADDRESS (including postal city) 199 Beagle Club Road
Carlisle
in the municipality of Middlesex , County of Cumberland ZIP
in the School District of Cumberland Valley , in the Commonwealth of Pennsylvania.
Tax ID #(s): 21-14-0863-003B and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): 
MLS# 1000430040

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

Broker (Company) NextHome Capital Realty    Licensee(s) (Name) Isabel Warrell

Company License # RB068467          State License # RS319250
Company Address 4349 Carlisle Pike    Direct Phone(s)
Camp Hill PA 17011              Cell Phone(s) 7175790705
Company Phone 7174696500          Email isabelwarrell@gmail.com
Company Fax                Licensee(s) is (check only one):
Broker is (check only one):          ☐ Buyer Agent (all company licensees represent Buyer)
☒ Buyer Agent (Broker represents Buyer only)    ☒ Buyer Agent with Designated Agency (only Licensee(s) named
☐ Dual Agent (See Dual and/or Designated Agent box below)       above represent Buyer)
                     ☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

Broker (Company) Re/Max 1st Advantage    Licensee(s) (Name) Judy Fogleman

Company License # RB065945          State License # RS320906
Company Address 6375 Mercury Drive    Direct Phone(s)
Mechanicsburg PA 17050            Cell Phone(s) 7176564471
Company Phone 7175915555          Email judyloveshouses@gmail.com
Company Fax                Licensee(s) is (check only one):
Broker is (check only one):          ☐ Seller Agent (all company licensees represent Seller)
☒ Seller Agent (Broker represents Seller only)    ☐ Seller Agent with Designated Agency (only Licensee(s) named
☐ Dual Agent (See Dual and/or Designated Agent box below)       above represent Seller)
                     ☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: TW AEW          Seller Initials: DT DT

**Pennsylvania Association of Realtors®**

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev. 6/17; rel. 7/17

NextHome Capital Realty, 4349 Carlisle Pike Camp Hill, PA 17011                Phone: (717)645-7152    Fax:
Michael Pion                         Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

"A"

1  1. **By this Agreement**, dated ___June 3, 2018___
2     Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
3  2. **PURCHASE PRICE AND DEPOSITS (4-14)**
4     (A) Purchase Price $ ~~405,000~~ 403,000
5        ( ~~Four hundred thousand five thousand~~ Four hundred and three thousand dollars
6        _____ U.S. Dollars), to be paid by Buyer as follows:
7        1. Initial Deposit, within __5__ days (5 if not specified) of Execution Date,
8           if not included with this Agreement:                                        $ 5,000.00  5,000
9        2. Additional Deposit within ____ days of the Execution Date:                  $ ____  AFW
10       3. _____                           $ ____
11       Remaining balance will be paid at settlement.
12    (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
13        within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
14        sonal check.
15    (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____
16        _____ AFW
17        who will retain deposit in an escrow account in conformity with all applicable laws and regulations until consummation or ter-
18        mination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
19        the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
20        Agreement.
21 3. **SELLER ASSIST (If Applicable) (1-10)**
22    Seller will pay $ 12,000 _____ or _____ % of Purchase Price (0 if not specified) toward
23    Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
24    approved by mortgage lender.
25 4. **SETTLEMENT AND POSSESSION (4-14)**
26    (A) Settlement Date is ___August 3, 2018_____, or before if Buyer and Seller agree.
27    (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
28        Buyer and Seller agree otherwise.
29    (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
30        current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
31        fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay
32        up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
33        _____
34    (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
35        1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
36        2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31.
37        School tax bills for all other school districts are for the period from July 1 to June 30.
38    (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
39        _____
40    (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
41        _____
42    (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
43        broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
44        is subject to a lease.
45    (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
46        assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller
47        will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will
48        acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
49        ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
50 5. **DATES/TIME IS OF THE ESSENCE (1-10)**
51    (A) Written acceptance of all parties will be on or before: ___June 4, 2018___ June 5, 2018
52    (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
53        essence and are binding.
54    (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
55        ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
56        the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
57        tialed and dated.
58    (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
59        ment of the parties.
60    (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
61        and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
62        to all parties, except where restricted by law.

63 Buyer Initials: _____  AFW

ASR Page 2 of 13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Seller Initials: _____  AFW

**6. ZONING (4-14)**

Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
Zoning Classification, as set forth in the local zoning ordinance: _residential_

**7. FIXTURES AND PERSONAL PROPERTY (9-16)**

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____
_____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

**8. MORTGAGE CONTINGENCY (9-16)**

☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☒ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ ~~324,000.00~~ 322,000 | Loan Amount $ _____ |
| Minimum Term _30_ years | Minimum Term _____ years |
| Type of mortgage _conventional_ | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _90_ % _TBD_ | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender _members 1st Fed Credit Union_ | Mortgage lender _____ |
| Interest rate _4.025_ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _4.8_ %. | Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than _July 16, 2018_.

  1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.

  2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
     a. Does not satisfy the terms of Paragraph 8(A), OR
     b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within _7_ DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

  3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

Buyer Initials: _TK_ _AFU_                      ASR Page 3 of 13                      Seller Initials: _DT_ _DT_

DocuSign Envelope ID: F4CFF32D-753A-4199-AF86-018F94F4E7CC

129   (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
130        LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific
131        level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The
132        appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher
133        or lower than the Purchase Price and/or market price of the property.
134   (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
135        the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
136        Buyer will do so at least _____ 15 _____ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
137        by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
138        lender(s) to make the above mortgage term(s) available to Buyer.
139   (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
140        cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
141        identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
142        otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
143        Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
144        application.
145   (F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or
146        employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
147        ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
148        reject, or refuse to approve or issue, a mortgage loan commitment.
149   (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
150        repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within _____ 5 _____
151        DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
152        expense.
153     1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
154          agrees to the RELEASE in Paragraph 28 of this Agreement.
155     2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within _____ 5 _____
156          DAYS, notify Seller of Buyer's choice to:
157          a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will
158            not be unreasonably withheld, OR
159          b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
160            Paragraph 26 of this Agreement.
161        If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to
162        Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree
163        to the RELEASE in Paragraph 28 of this Agreement.

---

**FHA/VA, IF APPLICABLE**

164
165   (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
166        chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
167        has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
168        Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
169        $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
170        proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
171        is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
172        not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
173        Property are acceptable.
174        Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
175        Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department,
176        makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
177        more than two years, or both."
178   (I) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
179     ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
180        getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
181        FHA will not perform a home inspection nor guarantee the price or condition of the Property.
182   (J) Certification We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
183        purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
184        connection with this transaction is attached to this Agreement.

185 **9. CHANGE IN BUYER'S FINANCIAL STATUS (4-14)**
186     In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and
187     lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not lim-
188     ited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation;
189     entry of a judgment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may
190     affect Buyer's ability to purchase.

191 Buyer Initials: _TA_ / _AFW_          ASR Page 4 of 13          Seller Initials: _Dr_ _Dr_

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

192 **10. SELLER REPRESENTATIONS (4-14)**
193    (A) **Status of Water**
194       Seller represents that the Property is served by:
195       ☒ Public Water   ☐ Community Water   ☐ On-site Water   ☐ None   ☐ _____
196    (B) **Status of Sewer**
197       1.  Seller represents that the Property is served by:
198          ☒ Public Sewer   ☐ Community Sewage Disposal System   ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
199          ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)   ☐ Holding Tank (see Sewage Notice 3)
200          ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
201          ☐ None (see Sewage Notice 1)   ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
202          ☐
203       2.  **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
204          **Notice 1:** There is no currently existing community sewage system available for the subject property. Section 7 of the
205          Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
206          repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
207          permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
208          administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
209          local agency charged with administering the Act will be the municipality where the Property is located or that municipality
210          working cooperatively with others.
211          **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions**
212          **of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing,
213          constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre
214          parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted
215          and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction
216          may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
217          **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water**
218          **carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.**
219          Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank
220          from the date of its installation or December 14, 1995, whichever is later.
221          **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-**
222          **tance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
223          provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
224          supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hori-
225          zontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
226          absorption area shall be 100 feet.
227          **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage facilities
228          are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality com-
229          pletes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.
230    (C) **Historic Preservation**
231       Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
232       _____
233    (D) **Land Use Restrictions**
234       1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
235          following Act(s) (see Notices Regarding Land Use Restrictions below):
236          ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
237          ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
238          ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
239          ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
240          ☐ Other _____
241       2. **Notices Regarding Land Use Restrictions**
242          a. **Pennsylvania Right-To-Farm Act:** The property you are buying maybe located in an area where agricultural operations
243          take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
244          circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
245          b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
246          ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
247          of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
248          may result in the future as a result of any change in use of the Property or the land from which it is being separated.
249          c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
250          supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open
251          space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that
252          the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific
253          termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply
254          from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the
255          Property, or any portion of it, Buyer is further advised to determine the term of any covenant now in effect.

256 Buyer Initials: _TAJ, APW_             ASR Page 5 of 13             Seller Initials: _DT_ _DT_

257     **d. Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are
258     environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the
259     land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer
260     has been advised of the need to determine the restrictions on development of the Property and the term of any contract now
261     in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

262 **(E) Real Estate Seller Disclosure Law**
263     Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real
264     estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residen-
265     tial real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer
266     of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING**
267     **UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures
268     regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale
269     of condominium and cooperative interests.

270 **(F) Public and/or Private Assessments**
271     1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner asso-
272     ciation assessments have been made against the Property which remain unpaid, and that no notice by any government or public
273     authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to vio-
274     lations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition
275     that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
276
277     2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
278     *No exceptions*
279 **(G) Highway Occupancy Permit**
280     Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

281 **11. WAIVER OF CONTINGENCIES (9-05)**
282     If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions,
283     boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise
284     **any of Buyer's options within the times set forth in this agreement is a Waiver of that contingency and Buyer accepts the**
285     **Property and agrees to the release in Paragraph 28 of this agreement.**

286 **12. BUYER'S DUE DILIGENCE/INSPECTIONS (9-16)**
287 **(A) Rights and Responsibilities**
288     1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to
289     surveyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections.
290     2. Buyer may make two pre-settlement walk-through inspections of the Property. Buyer's right to these inspections is not waived
291     by any other provision of this Agreement.
292     3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
293     4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
294     5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless
295     otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.
296 **(B)** Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
297     "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
298     licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
299     inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for
300     Notices Regarding Property and Environmental Inspections)
301 **(C)** For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
302     Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a
303     written corrective proposal to Seller, according to the terms of Paragraph 13(B).
304     **Home/Property Inspections and Environmental Hazards (incl. etc.)**
305 **Elected**   Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior   **Waived**
306 *TAW / AFW* doors; exterior building material; fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; ___/___
307     electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water
308     penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other
309     environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other
310     items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home
311     Inspection Law, the home inspection must be performed by a full member in good standing of a national home
312     inspection association, or a person supervised by a full member of a national home inspection association, in
313     accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed
314     or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections)
315     **Wood Infestation**
316 **Elected**   Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a   **Waived**
317 *TAW / AFW* wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided ___/___
318     by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage
319     lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited
320     to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals

321 Buyer Initials: *TAW / AFW*          ASR Page 6 of 13          Seller Initials: [DS] / [DS]

322 active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide appli-
323 cator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain
334 a written Report from a professional contractor, home inspector or structural engineer that is limited to structural
325 damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

326 **Deeds, Restrictions and Zoning**
327 Elected Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi- _Waived_
328 ____/____ nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the _TA_ / _AFW_
329 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is
330 permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
331

332 **Water Service**
333 Elected Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise _Waived_
334 ____/____ qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will _TA_ / _AFW_
335 locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
336 condition, at Seller's expense, prior to settlement.

337 **Radon**
338 Elected Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency _Waived_
339 ____/____ (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels _TA_ / _AFW_
340 or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay
341 of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of
342 lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem,
343 it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates
344 or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection.
345 Information about radon and about certified testing or mitigation firms is available through Department of
346 Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O.
347 Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

348 **On-lot Sewage (If Applicable)**
349 Elected Buyer may obtain an Inspection of the individual on-lot sewage disposal system from a qualified, professional _Waived_
350 ____/____ inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, and _TA_ / _AFW_
351 empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition, at
352 Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot
353 Sewage Inspection Contingency.

354 **Property and Flood Insurance**
355 Elected Buyer may determine the insurability of the Property by making application for property and casualty insurance for _Waived_
356 ____/____ the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the _TA_ / _AFW_
357 insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may
358 be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to
359 Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance
360 premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insur-
361 ance agents regarding the need for flood insurance and possible premium increases.

362 **Property Boundaries**
363 Elected Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal _Waived_
364 ____/____ description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property sur- _TA_ / _AFW_
365 veyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or
366 constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations
367 of size of property are approximations only and may be inaccurate.

368 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
369 Elected Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a _Waived_
370 ____/____ risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz- _TA_ / _AFW_
371 ards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard**
372 **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved**
373 **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-**
374 **arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any**
375 **lead-based paint records regarding the Property.**

376 **Other**
377 Elected _Waived_
378 ____/____
379
380 The Inspections elected above do not apply to the following existing conditions and/or items: _____
381
382

383 **(D) Notices Regarding Property & Environmental Inspections**
384 1. **Exterior Building Materials**: Poor or improper installation of exterior building materials may result in moisture penetrating
385 the surface of a structure where it may cause mold and damage to the building's frame.

Case 1:18-bk-00449-RNO   Doc 81   Filed 06/19/18   Entered 06/19/18 13:13:43   Desc
Main Document   Page 14 of 26

DocuSign Envelope ID: F4CFF32D-753A-4199-AF86-018F94F4E7CC

387    2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.

388    3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
389    of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsi-
390    bility to dispose of them properly.

391    4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to
392    investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the
393    property would be affected or denied because of its location in a wetlands area.

394    5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
395    pollen and viruses) have been associated with allergic responses.

396    6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
397    directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
398    20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
399    Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
400    and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
401    calling 1-877-724-3258.

402  **13. INSPECTION CONTINGENCY (4-14)**

403    (A) The Contingency Period is ___2.0___ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
404    in Paragraph 12(C).

405    (B) Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer
406    will, within the stated Contingency Period:

407    1. Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR

408    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
409    Paragraph 26 of this Agreement, OR

410    3. Present the Report(s) to Seller with a **Written Corrective Proposal ("Proposal")** listing corrections and/or credits desired by Buyer.
411    The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the cor-
412    rections requested in the Proposal; provisions for payment, including retests, and a projected date for completion of the corrections.
413    Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental require-
414    ments if performed in a workmanlike manner according to the terms of Buyer's Proposal.

415    a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
416    Period.

417    (1) During the Negotiation Period, Seller will either agree to satisfy all the terms of Buyer's Proposal or negotiate, by written
418    or verbal communication, another mutually acceptable written agreement, providing for any repairs or improvements to
419    the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.

420    (2) If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable
421    written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
422    Negotiation Period ends.

423    b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within
424    _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:

425    (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
426    Agreement, OR

427    (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
428    of Paragraph 26 of this Agreement.

429    **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this**
430    **Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property**
431    **and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the**
432    **Negotiation Period.**

433    (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
434    days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the
435    name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected comple-
436    tion date for corrective measures. Within ___5___ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the
437    stated time, Buyer will notify Seller in writing of Buyer's choice to:

438    1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR

439    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
440    Paragraph 26 of this Agreement, OR

441    3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mort-
442    gage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the
443    mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller,
444    which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer
445    may, within ___5___ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned
446    to Buyer according to the terms of Paragraph 26 of this Agreement.

447    **If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice**
448    **to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.**

449  **14. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**

450    In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-

451  Buyer Initials: _TAV_ / _AFV_          ASR Page 8 of 13          Seller Initials: _DT_ / _DT_

452 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the
453 property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the
454 property and result in a change in property tax.
455 15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (4-14)
456     (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
457         received after Seller has signed this Agreement and before settlement, Seller will within     5     DAYS of receiving the notices and/or
458         assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
459             1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
460                 notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
461             2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
462                 within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within     5     DAYS
463                 that Buyer will:
464                 a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
465                     Paragraph 28 of this Agreement, OR
466                 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
467                     Paragraph 26 of this Agreement.
468                 If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to
469                 Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
470     (B) If required by law, within     30     DAYS from the Execution Date of this Agreement, but in no case later than     15     DAYS prior to
471         Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
472         of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the
473         Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.
474             1. Within     5     DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy
475                 of the notice to Buyer and notify Buyer in writing that Seller will:
476                 a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improve-
477                     ments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
478                 b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
479                     notify Seller in writing within     5     DAYS that Buyer will:
480                     (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
481                         will not be unreasonably withheld, OR
482                     (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
483                         of Paragraph 26 of this Agreement.
484                 If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written
485                 notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this
486                 Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the
487                 notice provided by the municipality.
488             2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before
489                 Settlement Date to make the required repairs/improvements, Buyer may, within     5     DAYS, terminate this Agreement by writ-
490                 ten notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
491             3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller
492                 will perform all repairs/improvements required by the notice at Seller's expense. Paragraph 15(B)(3) will survive settlement.
493 16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)
494     (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
495         ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of
496             the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the
497             condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
498         ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
499             the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration
500             (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions
501             set forth in Section 5407(a) of the Act.
502     (B) THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A
503         PLANNED COMMUNITY:
504         If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
505         Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
506         this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
507         Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
508         Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
509     (C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED
510         COMMUNITY:
511         1. Within     15     DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
512             a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
513             that the association is required to provide these documents within 10 days of Seller's request.
514         2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer

515 Buyer Initials: _ZAL_ _AFW_               ASR Page 9 of 13                 Seller Initials: _Dt_ _Dt_

DocuSign Envelope ID: F4CFF32D-753A-4199-AF86-018F94F4E7CC

516 for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
517 association in the Certificate.
518    3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for
519 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this
520 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
521    4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
522 reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
523 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
524 cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
525 Appraisal fees and charges paid in advance to mortgage lender.

526 **17. TITLES, SURVEYS AND COSTS (4-14)**
527   (A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular
528 rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; his-
529 toric preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
530 ground; easements of record; and privileges or rights of public service companies, if any.
531   (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from
532 a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies
533 come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer
534 agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's
535 title insurance policy.
536   (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
537 (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
538 and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
539   (D) Seller has the right, upon request, to receive a free copy of any title abstract for the Property from the party for whom it was prepared.
540   (E) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
541 tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
542 required by the mortgage lender will be obtained and paid for by Buyer.
543   (F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the
544 Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but
545 is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against
546 Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient
547 to satisfy all liens and encumbrances against the Property.
548   (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as
549 specified in Paragraph 17(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to
550 Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred
551 by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in
552 Paragraph 17(C) items (1), (2), (3) and in Paragraph 17(E).
553   (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
554 about the status of those rights unless indicated elsewhere in this Agreement.
555     ☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.
556   (I)  COAL NOTICE (Where Applicable)
557 THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH
558 THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL
559 RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE,
560 BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July
561 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from
562 coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private
563 contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with
564 the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees
565 to sign the deed from Seller which deed will contain the aforesaid provision.
566   (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
567 _____
568   (K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
569     ☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.
570     2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee
571 Obligation Act (Act 1 of 2011; 68 P.C.S. §§ 8101, et seq.), which defines a Private Transfer Fee as "a fee that is payable upon the trans-
572 fer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs
573 with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or
574 is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private
575 Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where
576 a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

577 **18. MAINTENANCE AND RISK OF LOSS (1-14)**
578   (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
579 specifically listed in this Agreement in its present condition, normal wear and tear excepted.

580 Buyer Initials: _TK_ / _AFW_       ASR Page 10 of 13       Seller Initials _DT_ / _DT_

Case 1:18-bk-00449-RNO   Doc 81   Filed 06/19/18   Entered 06/19/18 13:13:43   Desc
Main Document     Page 17 of 26

DocuSign Envelope ID: F4CFF32D-753A-4199-AF86-018F94F4E7CC

581 (B) If any part of the Property included in the sale fails before settlement, Seller will:
582    1. Repair or replace that part of the Property before settlement, OR
583    2. Provide prompt written notice to Buyer of Seller's decision to:
584      a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
585       if any, OR
586      b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
587       part of the Property.
588    3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller**
589    **fails to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within    5    DAYS or before Settlement Date,
590    whichever is earlier, that Buyer will:
591      a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
592      b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
593       Paragraph 26 of this Agreement.
594    **If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate** this Agreement by written notice
595    to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
596 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
597   replaced prior to settlement, Buyer will:
598    1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
599    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
600    Paragraph 26 of this Agreement.

601 **19. HOME WARRANTIES (1-10)**
602 At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller under-
603 stand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-
604 existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifi-
605 cations that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home
606 warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

607 **20. RECORDING (9-05)**
608 This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
609 causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

610 **21. ASSIGNMENT (1-10)**
611 This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and, to the extent assignable,
612 on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless oth-
613 erwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

614 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
615 (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
616   laws of the Commonwealth of Pennsylvania.
617 (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either
618   party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

619 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
620 The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
621 Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
622 real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
623 chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
624 to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. tax-
625 ation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer
626 you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold,
627 you may be held liable for the tax.

628 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
629 The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
630 for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal**
631 **police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular prop-
632 erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

633 **25. REPRESENTATIONS (1-10)**
634 (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
635   licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
636   Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
637   covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
638   Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
639 (B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property
640   specifically listed herein) **before signing this Agreement or has waived the right to do so,** and agrees to purchase the Property
641   **IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
642   Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the struc-
643   tural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of con-
644   ditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems con-
645   tained therein.

646 Buyer Initials: TAV / AFW       ASR Page 11 of 13       Seller Initials: DT / DT

647  (C) Any repairs required by this Agreement will be completed in a workmanlike manner.

648  (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

649 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)**

650  (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
651   deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
652   Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

653  (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
654   determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
655    1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
656     agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
657    2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
658     Broker how to distribute some or all of the deposit monies.
659    3. According to the terms of a final order of court.
660    4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
661     deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

662  (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____30_____ days (180 if not
663   specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
664   Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
665   request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the sub-
666   ject of litigation or mediation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for
667   distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and
668   Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any dis-
669   tribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the
670   passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue
671   litigation even after a distribution is made.

672  (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
673   law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
674   monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming
675   them in litigation.

676  (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
677    1. Fail to make any additional payments as specified in Paragraph 2, OR
678    2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
679     legal or financial status, OR
680    3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

681  (F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
682    1. On account of purchase price, OR
683    2. As monies to be applied to Seller's damages, OR
684    3. As liquidated damages for such default.

685  (G) ☒ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED**
686    **DAMAGES.**

687  (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
688   and Seller are released from further liability or obligation and this Agreement is VOID.

689  (I) Brokers and licensees are not responsible for unpaid deposits.

690 **27. MEDIATION (1-10)**

691  Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
692  to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
693  Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
694  tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
695  equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party
696  to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any
697  statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agree-
698  ment to mediate disputes or claims arising from this Agreement will survive settlement.

699 **28. RELEASE (9-05)**

700  Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFI-
701  CER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through
702  them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the
703  consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-
704  based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system
705  or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the
706  terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pur-
707  sue any remedies that may be available under law or equity. This release will survive settlement.

708 **29. REAL ESTATE RECOVERY FUND (9-05)**

709  A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
710  estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been

711 Buyer Initials: _TJ\_/_AFW_     ASR Page 12 of 13     Seller Initials: _DT_ / _DT_

712 unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
713 3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

714 **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
715    (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
716       and Closing Disclosure(s) upon receipt.
717    (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
718       satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to**
719       **Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
720       directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows
721       communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If
722       there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller,
723       unless otherwise agreed to by the parties.

724 **31. HEADINGS (4-14)**
725    The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
726    sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

727 **32. SPECIAL CLAUSES (1-10)**
728    **(A) The following are attached to and made part of this Agreement if checked:**
729       ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
730       ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
731       ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
732       ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
733       ☒ Appraisal Contingency Addendum (PAR Form ACA)
734       ☐ Short Sale Addendum (PAR Form SHS)
735       ☐ _____
736       ☐ _____
737       ☐ _____
738    **(B) Additional Terms:**
739 *Home Must Appraise At or Above Sales Price.*
740 *Dining Room Window Treatments - Drapes, Blinds + Rods Included*
741
742 *Subject to the Approval of the US Bankruptcy Court.*
743

744 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

745 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
746 together shall constitute one and the same Agreement of the Parties.

747 **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised
748 to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

749 Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures
750 of all parties, constitutes acceptance by the parties.

751 *TAV / AFW* Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

752 *TAV / AFW* Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

753 *TAV / AFW* Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
754 before signing this Agreement.

755 *TAV / AFW* Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
756 received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

757 BUYER _____ DATE 6-3-18

758 BUYER _____ DATE 6-3-18

759 BUYER _____ DATE _____

760 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
761 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

762 SELLER _____ DATE _____

763 SELLER *David Thompson* DATE 6/4/2018

764 SELLER *Denise Thompson* DATE 6/4/2018

DocuSign Envelope ID: F4CFF32D-753A-4199-AF86-018F94F4E7CC

**APPRAISAL CONTINGENCY ADDENDUM TO AGREEMENT OF SALE**          ACA

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1  PROPERTY _199 Beagle Club Road Carlisle PA 17013_
2  SELLER _David + Denise Thompson_
3  BUYER _Timothy & Ann Wilson_

4  1.  The Agreement of Sale is contingent upon the Property being appraised (in a manner that is acceptable to underwriter if Buyer is obtaining
5      financing) and at a value that is equal to or higher than:
6          ☐  $ _____
7      ☒  The Purchase Price

8  2.  Contingency Period: _30_ days (30 if not specified) from the Execution Date of the Agreement.
9      **Within the Contingency Period,** Buyer may obtain an appraisal of the Property from a Pennsylvania certified appraiser. If Buyer is obtaining
10     financing, the appraisal shall be performed by a Pennsylvania certified appraiser selected by the lender to whom Buyer has made application
11     for financing. If Buyer is not obtaining financing, the appraisal shall be performed by a Pennsylvania certified appraiser selected by Buyer.
12     (A)  If the terms of Paragraph 1 are satisfied, or if the appraisal is not completed within the Contingency Period, Buyer **accepts the Property**
13          and agrees to the terms of the RELEASE paragraph of the Agreement of Sale.
14     (B)  If the terms of Paragraph 1 are not satisfied, Buyer will deliver a copy of the appraisal report to Seller, and Buyer will, **within the**
15          **Contingency Period:**
16          1.  **Terminate the Agreement of Sale** by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
17              the Agreement of Sale, OR
18          2.  Enter into a mutually acceptable written agreement with Seller.

19 3.  If Buyer does not terminate the Agreement of Sale or enter into a mutually acceptable written agreement with Seller **within this Contingency**
20     **Period,** Buyer waives this contingency.

21 All other terms and conditions of the Agreement of Sale remain unchanged and in full force and effect.

22 **BUYER** _[signature]_          DATE _6-3-18_
23 **BUYER** _Ann J. Wilson_          DATE _6-3-18_
24 **BUYER** _____          DATE _____
25 **SELLER** _Denise Thompson_          DATE _6/4/2018_
26 **SELLER** _____          DATE _____
27 **SELLER** _David Thompson_          DATE _____
        84CEBEFF2FC0442...

▰ Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2015
03/15

Phone: 717-409-6500        Fax: 717-727-7105        Isabel Warren        199 Beagle
              Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: BEC68A05-E236-4F85-A07A-4517FFC328F3

## ADDENDUM _____ 1 _____

Addendum to contract dated _____ June 4, 2018 _____ between:

_____ David Thompson, Denise Thompson _____ (Sellers) and

_____ Timothy A Wilson, Ann F Wilson _____ (Buyers) on property located

at _____ 199 Beagle Club Rd, Carlisle, PA 17013-8853 _____

Sellers agree to purchase and install new electric glass stove top in buyers choice of
color....black or white. The current bisque color of stove top is no longer available.

Initials: _____ / _____

Initials: (by) TAW  (by) AFW

┌─ DocuSigned by:
│  Denise Thompson
└─ 8C7A9FE176F748C...

┌─ DocuSigned by:
│  David Thompson
└─ BACEBFEE2EC0442...

RE/MAX First Advantage - PA, 6375 Mercury Dr Mechanicsburg PA 17050
Phone: 717-856-4481       Fax: 717-856-4481        Judy Fogleman                                    199 Beagle Club

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
DAVID ROBERT THOMPSON : CASE NO. 1-18-00449-RNO
aka DAVE ROBERT THOMPSON :
DENISE PEARL THOMPSON :
    Debtors : CHAPTER 13
         :
DAVID ROBERT THOMPSON :
aka DAVE ROBERT THOMPSON :
DENISE PEARL THOMPSON :
    Movants :
         :
   v. :
         :
CHARLES J. DEHART, III, ESQUIRE, :
CARTER LUMBER COMPANY, INC., :
FIRST NATIONAL BANK OF PA, :
NATIONSTAR MORTGAGE, LLC, aka :
MR. COOPER, :
CUMBERLAND COUNTY TAX CLAIM :
BUREAU :
    Respondents :

### ABBOTTS DAIRIES AFFIDAVIT

Debtor's counsel, Gary J. Imblum, Esquire, inquired with the realtor, Ron Rinehart, and was

informed of the following:

1.     Subject property has been listed for sale since April 14, 2018.

2.     Initially, it was listed for sale at $409,900.00.

3.     There were a previous offer on the property in the amount of $370,000.00. That sale

fell through.

4.     There is no connection between the proposed buyers, its owner and/or investors, and

the debtors.

Respectfully submitted,

Gary J. Imblum
Attorney Id. No. 42606
4615 Derry Street
Harrisburg, PA 17111
(717) 238-5250
Fax No. (717) 558-8990
gary.imblum@ imblumlaw.com
Attorney for Debtors

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
**DAVID ROBERT THOMPSON** : **CASE NO. 1-18-00449-RNO**
**aka DAVE ROBERT THOMPSON** :
**DENISE PEARL THOMPSON** :
      Debtors : **CHAPTER 13**
  :
**DAVID ROBERT THOMPSON** :
**aka DAVE ROBERT THOMPSON** :
**DENISE PEARL THOMPSON** :
      Movants :
  :
   **v.** :
  :
**CHARLES J. DEHART, III, ESQUIRE,** :
**CARTER LUMBER COMPANY, INC.,** :
**FIRST NATIONAL BANK OF PA,** :
**NATIONSTAR MORTGAGE, LLC, aka** :
**MR. COOPER,** :
**CUMBERLAND COUNTY TAX CLAIM** :
**BUREAU** :
      Respondents :

## ORDER

Upon consideration of Debtor's Motion to Sell Real Estate Free and Clear of Liens, and it appearing that no Objection or Answer was filed to the Motion by the time set forth in an Order, good reason appearing therefore, no objections appearing thereto, it is hereby declared that the Buyer (and/or its designee) is a good faith purchaser for purposes of Section 363(m) and (n) and for purposes of *In re Abbotts Dairies of Pennsylvania Inc.*, 788 F.2d 143 (3rd Cir. 1986);

**IT IS HEREBY ORDERED AND DECREED** that Federal Bankruptcy Rule 6004(g) is not applicable, and the real property may be sold and purchased immediately upon entry of Order of Court approving same and that the sale of real estate at 199 Beagle Club Road, Carlisle, Cumberland County, Pennsylvania, free and clear of liens, to Timothy Wilson and Ann Wilson for $403,000.00 is approved and distribution of the proceeds as set forth below shall be permitted:

1.      Payment of all closing costs for which Debtors are liable.

2.      Payment of attorney's fees of the amount approved by the Court pursuant to the Fee Application filed simultaneously herewith.

3.      Payment of any and all other miscellaneous fees involved with the refinance.

4.      Except as otherwise stated below, payment of any liens and mortgages in order of priority.

5.      As long as same is a valid lien on subject real estate, payment in full of Cumberland County Tax Claim Bureau statutory lien, or else the sale will not occur.

6.      As long as same is a valid lien on subject real estate, payment in full of Cumberland County Tax Claim Bureau real estate taxes, if any, or else the sale will not occur.

7.      As long as same is a valid lien on subject real estate, payment in full of Nationstar Mortgage, LLC, a/k/a Mr. Cooper, mortgage, or else the sale will not occur.

8.      As long as same is a valid lien on subject real estate, payment in full of First National Bank mortgage, or else the sale will not occur.

9.      If Debtors successfully avoid the Carter Lumber Company, Inc's lien as a preference or otherwise, no payment will be made towards this debt from the proceeds of sale.

10.      Payment to Debtors up to the entire amount of their exemption in subject real estate.

11.      If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to Trustee DeHart in an amount up to the amount necessary to fully fund the Plan, less any amount otherwise payable to a secured creditor pursuant to Debtors' Plan, which is, in fact, paid at settlement.